IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JANET GRACE O.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 20-1228-JWL |
| KILOLO KIJAKAZI,[2] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Dr. Hackney's medical opinion, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was appointed as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively filed an application for SSI benefits on August 9, 2018. (R. 15). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in considering the opinions of her examining psychologist, Dr. Hackney.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

2

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

      The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R.

§ 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.     Evaluation of the Medical Opinions Regarding Plaintiff's Mental Limitations

Plaintiff claims the RFC assessed is unsupported by substantial evidence because the ALJ "failed [] properly [to] weigh the opinion of consultative psychological examiner Gary R. Hackney, Ph.D."  (Pl. Br. 7).  She argues the ALJ erred in failing to apply Tenth Circuit case law.  Id. at 8.  Plaintiff acknowledges that new SSA regulations regarding evaluation of medical opinions apply here because the application in this case was filed after March 27, 2017, but she argues the ALJ failed to discuss the consistency and supportability of significantly probative evidence from Dr. Hackney's report and to discuss other significantly probative record evidence, and thereby erred in her decision.

4

(Pl. Br. 10-11) (citing Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996); and Cox v. Saul, No. CIV 19-1117 KBM, 2020 WL 6701426, at *4 (D.N.M. Sept. 9, 2020)).

The Commissioner argues the ALJ properly evaluated Dr. Hackney's medical opinion and the prior administrative medical findings of Dr. Bucklew and Dr. Lark. (Comm'r Br. 10-12). He suggests Plaintiff's argument that certain other record evidence supports Dr. Hackney's opinion is an improper attempt to get the court to reweigh the evidence in Plaintiff's favor. Id. at 12-13.

In her Reply Brief Plaintiff reiterates her argument that certain record evidence was significantly probative evidence which the ALJ failed to address. She argues that the Commissioner's response was largely a restating of the evidence which is an improper "attempt to bolster the ALJ's decision with post hoc rationalization." (Reply 2). She argues this so because although the ALJ discussed Dr. Hackney's examination results she "failed [] properly [to] explain how these results factored into the weighing of Dr. Hackney's opinion." Id.

As noted above, to demonstrate that the ALJ's finding of fact is erroneous, Plaintiff must point to record evidence that compels a contrary conclusion. Elias-Zacarias, 502 U.S. at 481, n.1. The mere fact that the evidence might also support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de

novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

The court's review begins with the decision of the ALJ, not what the plaintiff—or even the court—believes should have been the better, or best, decision. If the ALJ applied the correct legal standard and the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion,' Richardson v. Perales, 402 U.S. at 401, the court must affirm that decision.

As Plaintiff acknowledges, the Commissioner propounded new regulations regarding the evaluation of medical opinions for claims filed, such as was the present claim, on or after March 27, 2017. 20 C.F.R. § 404.1520c (2019). An ALJ is to evaluate medical opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2019). The most important factors are supportability and consistency, id., and the ALJ will articulate how persuasive she finds all medical opinions. Id. § 404.1520c(b).

The ALJ evaluated Plaintiff's mental impairments at step two and three and found that she has moderate limitations in each of the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19). She found that Plaintiff's mental impairments do not meet or medically equal the severity of any listed mental disorders. Id. The ALJ noted certain evidence relevant to each of the broad mental functional areas:

> Consulting psychologist Gary Hackney, Ph.D., found the claimant's memory to be poor, although he also noted that she was able to provide a good history (Exhibit 8F at 5 [(R. 437)]). None of the claimant's treatment providers have observed any cognitive deficits. In her Adult Function Report, the claimant does not allege any problems with memory (Exhibit 5E at 10 [(R. 263)]). The claimant does have a limited education, and reports having been in special education classes during her schooling (Exhibit 8F at 3 [(R. 435)]). Despite her limited education and memory problems, however, the claimant has a history of performing skilled and semi-skilled work (Exhibit 22E [(R. 353)]).
>
> \*\*\*
>
> Dr. Hackney found the claimant to be pleasant and cooperative, with good eye contact, and normal, unpressured, speech (Exhibit 8F at 4-5 [(R. 436-37)]). The claimant's treatment providers have not noted any behavioral abnormalities, or difficulty with interpersonal interaction. The claimant reports a "good" ability to get along with authority figures, and denies ever having been fired from a job due to interpersonal conflict (Exhibit 5E at 10 [(R. 263)]).
>
> \*\*\*
>
> Dr. Hackney, while noting some cognitive impairment, observed the claimant to be "very attentive," and adequately focused during her testing (Exhibit 8F at 4, 5 [(R. 436, 437)]).

(R. 19).

The ALJ summarized the record evidence regarding Plaintiff's mental status, capabilities, and limitations:

> The claimant was abused as a child, and has struggled, as an adult, with depression and posttraumatic stress disorder related to this trauma (Exhibit 8F at 3 [(R. 435)]). She has also reported that her depression is, at least in part, related to her chronic pain (Exhibit 5F at 6 [(R. 405)]). The claimant is receiving outpatient treatment, with medication, which appears to be successful in controlling her symptoms. The claimant's treatment records described her mood as stable, and note euthymic mood, appropriate affect, good eye contact, and normal speech and motor activity (Exhibits 7F at 12; 10F at 8 [(R. 422, 447)]).

7

> The claimant was hospitalized for carbon monoxide poisoning as a teenager, and has reported that her cognitive abilities declined following this experience (Exhibit 8F at 3 [(R. 435)]). She testified that she did not complete high school, and was in special education classes prior to leaving school. Consulting psychologist Gary Hackney, Ph.D., who examined the claimant in January of 2019, assessed her intelligence as falling within the borderline range of intellectual functioning, although this has not been confirmed through formal intelligence testing. Dr. Hackney diagnosed the claimant with an unspecified mild neurocognitive disorder (Exhibit 8F at 5 [(R. 435)]). The undersigned notes, however, that none of the claimant's treatment providers have reported any cognitive deficits, and the claimant has worked, in the past, in skilled and semi-skilled occupations, suggesting greater cognitive abilities than opined to by Dr. Hackney (Exhibit 22E [(R. 352)]).

(R. 22). The ALJ explained her evaluation of the persuasiveness of the psychologists'

opinions:[3]

> In assessing the claimant's mental functional abilities, the undersigned has found persuasive the opinion of State [sic] agency psychological consultant Russell Lark, Ph.D. (Exhibit 4A [(R. 85-99)]). His opinion is well-explained, and well-supported by, and consistent with, the treatment records which show the claimant was appropriately dressed and groomed, was cooperative, had a normal cognitive examination, a logical thought process, was able to maintain focus, had adequate attention and concentration and good insight, but did manifest at times lacking or fair judgment (Exhibits 1F/8, 3F/10, 7F/12-16, 8F [(R. 370, 392, 422-26, 433-38)]). State agency psychological consultant, J. Edd Bucklew, Ph.D., essentially provided the same opinion except that the claimant's understanding and memory was not limited (Exhibit 1A [(R. 71-82)]). Dr. Lark's opinion is more persuasive in that regard as he considered the psychological evaluation finding in January 2019 of a 24/30 score on the MMSE and he opined that the claimant had more than minimal deficits in understanding, remembering and applying information (Exhibit 8F [(R. 433-38)]).

---

[3] The "opinions" of Dr. Bucklew and Dr. Lark, the state agency psychological consultants, are properly referred to as "prior administrative medical findings." However, in cases such as this, medical opinions and prior administrative medical findings are considered and articulated in the same manner. 20 C.F.R. § 404.1520c (2019). The court refers to them here as medical opinions.

8

> The undersigned has not found persuasive the opinion of Dr. Hackney, who opined that the claimant is unable to perform even simple tasks in an average amount of time, maintain concentration over an eight-hour workday, or keep a work schedule with average performance demands (Exhibit 8F at 5 [(R. 437)]). This opinion is not consistent with the claimant's treatment records, which do not reflect the significant cognitive deficits opined to by Dr. Hackney. The undersigned notes that, despite whatever cognitive impairment the claimant may have suffered as a result of her carbon monoxide poisoning, she has been able to work in skilled and semi-skilled positions over the years (Exhibit 22E [(R. 352)]). While it is certainly plausible that the claimant's recently worsened depression could result in some additional limitation in this area, as noted above the claimant's treatment records indicate that her depression has responded well to medication, and is generally well-controlled. The evidence certainly does not support the degree of limitation opined to by Dr. Hackney.

(R. 23).

The court finds the ALJ fairly considered and discussed the evidence relating to Plaintiff's mental condition and to Dr. Hackney's evaluation and report of that condition. The ALJ explained her evaluation of the persuasiveness of the medical opinions of the mental health professionals in this case. The court's review of the record reveals the ALJ's evaluation is supported by the record. Plaintiff does not attempt to demonstrate factual error in the ALJ's analysis or that the evidence compels a different result. Rather, she points to the principle that an ALJ must discuss the evidence supporting her position, uncontroverted evidence she chooses not to rely upon, and significantly probative evidence she rejects. Plaintiff then points to Dr.Hackney's individual, specific findings (scaled scores, specific failures of recall, failure to do serial sevens, etc), implies such specific findings are significantly probative evidence and argues that the ALJ's alleged failure to discuss these specific findings is, therefore, error.

9

The court does not agree. Although the ALJ did not discuss every detail of Dr. Hackney's report and opinion (or of the findings and opinions of Drs. Lark's and Bucklew's reports), she provided a fair and thorough consideration and discussion of Dr. Hackney's report and opinion as is demonstrated by the court's relevant quotations above. As Plaintiff argues, the Tenth Circuit has long recognized "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." Clifton, 79 F.3d at 1009-10 (citations omitted). Here, the ALJ stated he considered all the evidence and Plaintiff has not shown otherwise. Nor has she shown that the evidence she cites was either significantly probative or rejected by the ALJ. Plaintiff points to low scaled scores of three and one respectively in Logical Memory I and II, some confusion on dates and times, inability to do serial sevens, missing all three recall items, poor abstraction skills, a scaled score of three on similarities, poor insight and judgment, and a scaled score of five in comprehension. The ALJ did not discuss these issues specifically but she noted Dr. Hackney's report Plaintiff was able to provide a good history, none of her treatment providers noted cognitive deficits, she did not allege memory problems on her Adult Function Report, that despite her education and memory problems she has a history of skilled and semi-skilled work, and Dr. Hackney noted her to be "very attentive" and adequately focused. (R. 19). The ALJ provided all the consideration, discussion, and articulation she was required in this regard.

10

Moreover, while the scaled scores provided by Dr. Hackney are low numerically, he provides no indication of the range of the scale on which he evaluated. The court notes the only "tests" he reported giving were Consultation and Mental Status Psychological Interview, and a Mini Mental Status Exam (MMSE), on which he reported Plaintiff "received a score of 24 out of 30." (R. 435, 437). The ALJ noted that Dr. Hackney did not give Plaintiff an intelligence test on which to base his assessment of borderline intellectual functioning. Id. at 22. It is likely that a psychologist reading Dr. Hackney's report would recognize the probative significance of the scaled scores reported, but the ALJ, Plaintiff's counsel, and this court are not psychologists and are not required or expected to have such medical expertise. However, Dr. Lark is a state agency psychologist who read Dr. Hackney's report and noted that Plaintiff reported a lot of symptoms to Dr. Hackney "but her MSE [(Mental Status Examination] was relatively normal psychologically speaking" and "[s]he scored 24/30 on the MMSE." (R. 96). Moreover, Dr. Lark found Plaintiff is not disabled and the ALJ found his opinion persuasive and more persuasive than Dr. Bucklew's opinion.

As noted above, the ALJ complied with her duty pursuant to Clifton. And the district court case Plaintiff cites does not support her argument. As Plaintiff suggests, the court in Cox quoted Clifton for the principal that the record must demonstrate the ALJ considered all the evidence and must discuss the evidence supporting her decision, uncontroverted evidence not relied upon, and significantly probative evidence she rejects. Cox, 2020 WL 6701426, at *4. In Cox, the ALJ found the state agency consultants' opinions "highly persuasive," and the plaintiff argued the ALJ failed to discuss the

11

consultants' opinions regarding "well-defined expectations" and "limited personal interactions." As the court has done here, the court in Cox found that the express limitations were adequately accounted for in the ALJ's RFC assessment and declined to reverse on the grounds presented. Id. at *5.

The remaining evidence cited by Plaintiff to show error in the ALJ's finding Dr. Hackney's opinion inconsistent with Plaintiff's treatment notes does not require a different result. Plaintiff cites evidence of a dysphoric mood, blunted affect or tearfulness, a diagnosis of major depressive disorder, trouble concentrating on things and a referral to a clinical social worker for treatment. (Pl. Br. 10). While in a very general and broad sense such evidence might be seen as consistent with aspects of Dr. Hackney's opinion, it is not evidence suggesting Plaintiff has the disabling limitations opined by Dr. Hackney—inability "to understand and perform simple tasks in an average amount of time, … to sustain concentration over an eight-hour day in routine activity or [to] keep a work schedule with average performance demands." (R. 437).

To find this evidence consistent with and supportive of Dr. Hackney's opinion, the court would have to reweigh the evidence and substitute its judgement for that of the Commissioner, a prospect from which it is prohibited and which, as the Commissioner suggests, Plaintiff is apparently seeking.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 19, 2021, at Kansas City, Kansas.

                                          s:/ *John W. Lungstrum*
                                          **John W. Lungstrum**
                                          **United States District Judge**

13